# Illinois Official Reports

## Supreme Court

---

**Yarbrough v. Northwestern Memorial Hospital**, 2017 IL 121367

---

| | |
|---|---|
| Caption in Supreme Court: | CHRISTINA YARBROUGH *et al.*, Appellees, v. NORTHWESTERN MEMORIAL HOSPITAL *et al.* (Northwestern Memorial Hospital, Appellant). |
| Docket No. | 121367 |
| Filed | December 29, 2017 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. William E. Gomolinski, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Cause remanded. |
| Counsel on Appeal | Kay L. Schichtel and Catherine Basque Weiler, of Swanson, Martin & Bell, LLP, of Chicago, for appellant.<br><br>Howard A. Janet, Giles H. Manley, and Patrick A. Thronson, of Janet, Jenner & Suggs, LLC, of Baltimore, Maryland, for appellees.<br><br>J. Timothy Eaton and Jonathan B. Amarilio, of Taft Stettinius & Hollister LLP, of Chicago, for *amici curiae* University of Chicago Medical Center *et al.* |

Robert E. Elworth and Leslie M. Odom, of HeplerBroom, LLC, of Chicago, for *amicus curiae* Illinois Association of Defense Trial Counsel.

Sarah F. King, of Clifford Law Offices, P.C., of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

Justices      JUSTICE THEIS delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Thomas and Garman concurred in the judgment and opinion.

Justice Burke dissented, with opinion, joined by Justices Freeman and Kilbride.

## OPINION

¶ 1      The circuit court of Cook County certified the following question pursuant to Illinois Supreme Court Rule 308 (eff. Feb. 26, 2010): "Can a hospital be held vicariously liable under the doctrine of apparent agency set forth in *Gilbert v. Sycamore* [*Municipal Hospital*], 156 Ill. 2d 511 ([1993]), and its progeny for the acts of the employees of an unrelated, independent clinic that is not a party to the present litigation?" The appellate court answered this question in the affirmative. 2016 IL App (1st) 141585, ¶ 46. For the reasons that follow, we find that the appellate court answered the question incorrectly. Accordingly, we reverse the judgment of the appellate court and remand this cause to the circuit court for further proceedings consistent with this opinion.

¶ 2                                        BACKGROUND

¶ 3      On November 15, 2005, plaintiff Christina Yarbrough went to the Erie Family Health Center (Erie) located at 1701 West Superior Avenue in Chicago after searching online for a clinic that would administer a pregnancy test without requiring her to have insurance coverage.

¶ 4      Erie does not require medical insurance. Erie is a "Federally Qualified Health Center" (FQHC) that comprises several clinics in the Chicago area.[1] FQHCs are "community-based and patient-directed organizations that serve populations with limited access to health care. These include low income populations, the uninsured, those with limited English proficiency, *** individuals and families experiencing homelessness, and those living in public housing." (Internal quotation marks omitted.) Lyndsay Gunkel, *Federally Qualified Health Centers: The*

---

[1]Employees of Erie are deemed federal employees. *Arteaga v. United States*, 711 F.3d 828, 830 (7th Cir. 2013) (citing 42 U.S.C. § 233(g)(1)(A), (g)(4) (2006)). Consequently, a tort suit against Erie or its employees can be maintained only under the Federal Tort Claims Act. *Id.* at 830-31 (citing 42 U.S.C. § 233(a), (g)(1)(A) (2006)).

*Next Step in Cost-Effective Health Care*, 20 Annals Health L. Advance Directive 31, 33 (2010); see also 42 U.S.C. § 254b (2012). FQHCs rely heavily on federal grants and Medicaid cost-based reimbursement to operate and provide the communities that they serve with primary and preventative care regardless of a patient's ability to pay. Gunkel, *supra*, at 32-33; see also 42 U.S.C. § 254b (2012).

¶ 5    Erie was originally founded as a project between Northwestern Memorial Hospital (NMH) and "Erie Neighborhood House" in 1957. NMH provides financial support, technological assistance, and strategic support. A representative of NMH may serve on Erie's board if requested by Erie's board chairperson. Erie-employed physicians seeking privileges to practice at NMH are required to apply for them, as would any physician.

¶ 6    At the time Yarbrough went to Erie in November 2005, she did not have a relationship with an obstetrician-gynecologist (OB-GYN) or a family physician. After receiving a positive pregnancy result during her initial visit, Yarbrough spoke with a staff member at Erie. She asked the unnamed staff person where she would deliver her baby. Yarbrough was informed that she would have her ultrasounds done at Northwestern Medicine Prentice Women's Hospital and would most likely deliver her baby at NMH. During this same visit, Yarbrough received informational materials regarding tours of NMH's birthing/delivery area, having the installation of an infant car seat inspected at NMH, and attending birthing classes at NMH. Based upon this information, Yarbrough believed that Erie and NMH were one and the same entity, particularly because she was told that she would give birth at NMH.

¶ 7    On November 30, 2005, Yarbrough began to experience vaginal bleeding and went to the emergency room at Advocate Illinois Masonic Medical Center (Advocate). She obtained an abdominal ultrasound there and was allegedly advised by a physician at Advocate that she had a bicornuate uterus.

¶ 8    On December 2, 2005, Yarbrough met at Erie with Betsy McKelvey, a certified nurse midwife, and Dr. Raymond Suarez, an OB-GYN. Both McKelvey and Dr. Suarez were employees of Erie. She underwent another abdominal ultrasound that day. Yarbrough was purportedly told that she did not have a bicornuate uterus but instead was diagnosed with a shortened cervix.

¶ 9    On February 21, 2006, Erie referred Yarbrough to NMH for a 20-week ultrasound. This second ultrasound was interpreted by Dr. William Grobman, who is employed by Northwestern Medical Faculty Foundation (NMFF).

¶ 10    On April 8, 2006, Yarbrough delivered her daughter, Hayley Joe Goodpaster, prematurely by emergency caesarean section at NMH. Dr. Suarez purportedly told Yarbrough that she did, in fact, have a bicornuate uterus and an "incompetent cervix."

¶ 11    On December 28, 2009, Yarbrough and David Goodpaster, on behalf of their daughter Hayley, filed a two-count complaint against NMH and NMFF. Count I of the complaint alleged medical negligence by Dr. Grobman, as an actual or apparent agent of NMFF, in relation to his interpretation of the ultrasound on February 21, 2006.[2] In count II, as subsequently amended on August 22, 2013, plaintiffs alleged that Erie's employees were the actual or apparent agents of NMH.

---

[2]Count I is not at issue in this appeal.

¶ 12 They alleged that the medical staff who treated Yarbrough at Erie had negligently failed to identify and address issues surrounding her shortened cervix and bicornuate uterus, causing her to deliver her daughter prematurely at 26 weeks' gestation. Plaintiffs further alleged that Yarbrough was never told that the healthcare workers at Erie were not employees of NMH. Plaintiffs alleged that based on Yarbrough's knowledge of NMH's reputation and the information provided to her by Erie, she believed that if she received prenatal care from Erie, she would be receiving treatment from NMH health care workers.

¶ 13 NMH moved for partial summary judgment on the amended complaint as to all agency claims arising out of treatment that Yarbrough received by Erie employees. NMH asserted that it did not hold Erie out as its agent. Similarly, Erie and its employees did not hold themselves out as agents of NMH. NMH maintained that Erie was an independent, federally funded community health center and that the staff at Erie who treated Yarbrough on-site at Erie were working strictly within the scope of their employment with Erie.

¶ 14 The trial court denied NMH's motion for partial summary judgment. After NMH orally moved to certify a question under Rule 308, the trial court ordered the parties to draft a proposed certified question, which they subsequently filed, respectively, with the court. Thereafter, the trial court entered an order certifying the above-quoted question, which the court drafted.

¶ 15 The appellate court initially denied NMH's application for leave to appeal. We denied NMH's petition for leave to appeal but entered a supervisory order directing the appellate court to vacate its order and to consider the question certified by the circuit court. *Yarbrough v. Northwestern Memorial Hospital*, No. 118149 (Ill. Nov. 26, 2014) (supervisory order).

¶ 16 The appellate court in its subsequent opinion answered the certified question in the affirmative. 2016 IL App (1st) 141585, ¶ 46. The appellate court rejected NMH's argument that *Gilbert* is inapplicable in this case because the alleged negligent conduct did not occur at the hospital. *Id.* ¶¶ 36, 46. The appellate court held that nothing in *Gilbert* limits a plaintiff from recovering against a hospital " 'merely because the negligent conduct of the physician did not occur in the emergency room or some other area within the four walls of the hospital.' " *Id.* ¶ 40 (quoting *Malanowski v. Jabamoni*, 293 Ill. App. 3d 720, 727 (1997)). The appellate court also held that a plaintiff is not required to name the individual physician or his or her employer as a defendant in order to hold the hospital vicariously liable as the principal. *Id.* ¶¶ 43-44, 46.

¶ 17 This court allowed NMH's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Mar. 15, 2016). In addition, we allowed the Illinois Association of Defense Trial Counsel to file an *amicus curiae* brief in support of NMH. We also allowed the University of Chicago Medical Center, Rush University Medical Center, Advocate Health Care, NorthShore University HealthSystem, Presence Health, and Trinity Health to file a joint *amicus curiae* brief in support of NMH. We further allowed the Illinois Trial Lawyers Association to file an *amicus curiae* brief in support of plaintiffs. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 18                                                    ANALYSIS

¶ 19 The certified question asks:

"Can a hospital be held vicariously liable under the doctrine of apparent agency set forth in *Gilbert v. Sycamore* [*Municipal Hospital*], 156 Ill. 2d 511 ([1993]), and its

progeny for the acts of the employees of an unrelated, independent clinic that is not a party to the present litigation?"

¶ 20 NMH asserts that the appellate court erred in answering this question in the affirmative. NMH contends that the doctrine of apparent authority, as set forth in *Gilbert* and subsequent cases, is inapplicable, as a matter of law, because the treatment at issue occurred at Erie and not at a hospital or hospital facility owned by NMH.

¶ 21 Rule 308(a) provides for interlocutory appeals of nonfinal orders that present "a question of law as to which there is substantial ground for difference of opinion." Ill. S. Ct. R. 308(a) (eff. Feb. 26, 2010). When the trial court finds that an answer to that question "may materially advance the ultimate termination of the litigation," the court must identify the question in writing, and the appellate court may allow an appeal. *Id.* "Because an interlocutory appeal under Rule 308 necessarily involves a question of law, our review of the appellate court's decision in such an appeal is *de novo*." *In re Marriage of Mathis*, 2012 IL 113496, ¶ 19.

¶ 22 This court first applied the apparent authority doctrine in a medical malpractice context in *Gilbert*. There, we addressed whether a hospital may be held vicariously liable for the negligence of a physician who is not an employee of the hospital but, rather, an independent contractor. *Gilbert*, 156 Ill. 2d at 514. The physician who treated the plaintiff's decedent in the hospital's emergency room was a staff physician practicing through an independent professional association. *Id.* at 515-16. The hospital did not advise emergency room patients that the physicians were independent contractors and not hospital employees. *Id.* at 516. The hospital argued that it could not be held vicariously liable for a physician's negligence where the physician was neither an employee nor agent of the hospital. *Id.* at 517. The appellate court agreed. *Id.*

¶ 23 In rejecting appellate court decisions that had refused to impose vicarious liability upon a hospital based upon an agency relationship unless the physician was an actual agent of the hospital, we held those decisions overlooked two realities of modern hospital care. *Id.* at 519-20. First, those appellate court decisions overlooked the "business of a modern hospital." *Id.* at 520. We recognized:

> " '[H]ospitals increasingly hold themselves out to the public in expensive advertising campaigns as offering and rendering quality health services. One need only pick up a daily newspaper to see full and half page advertisements extolling the medical virtues of an individual hospital and the quality health care that the hospital is prepared to deliver in any number of medical areas. Modern hospitals have spent billions of dollars marketing themselves, nurturing the image with the consuming public that they are full-care modern health facilities. All of these expenditures have but one purpose: to persuade those in need of medical services to obtain those services at a specific hospital. In essence, hospitals have become big business, competing with each other for health care dollars.' " *Id.* (quoting *Kashishian v. Port*, 481 N.W.2d 277, 282 (Wis. 1992)).

¶ 24 The second reality of modern hospital care discussed by this court in *Gilbert* involved the "reasonable expectations of the public." *Id.* at 521. We stated:

> " '[G]enerally people who seek medical help through the emergency room facilities of modern-day hospitals are unaware of the status of the various professionals working there. Absent a situation where the patient is directed by his own physician or where the

- 5 -

patient makes an independent selection as to which physicians he will use while there, it is the reputation of the hospital itself upon which he would rely. Also, unless the patient is in some manner put on notice of the independent status of the professionals with whom [he] might be expected to come into contact, it would be natural for him to assume that these people are employees of the hospital.' " *Id.* (quoting *Arthur v. St. Peters Hospital*, 405 A.2d 443, 447 (N.J. Super. Ct. Law Div. 1979)).

¶ 25    This court also emphasized that " '[s]uch appearances speak much louder than the words of whatever private contractual arrangements the physicians and the hospital may have entered into, unbeknownst to the public, in an attempt to insulate the hospital from liability for the negligence, if any, of the physicians.' " *Id.* (quoting *Brown v. Coastal Emergency Services, Inc.*, 354 S.E.2d 632, 637 (Ga. Ct. App. 1987)).

¶ 26    After considering these realities of modern hospital care, we held that a patient who is unaware that the person providing treatment is not the employee or agent of the hospital has the right to look to the hospital in seeking compensation for any negligence in providing emergency room care. *Id.* at 522. We stressed that liability attaches to the hospital in such cases only where the treating physician is the apparent or ostensible agent of the hospital. If a patient knows or should have known that the treating physician is an independent contractor, then the hospital will not be liable. *Id.*

¶ 27    This court held that in order to find a hospital vicariously liable for the negligence of independent-contractor physicians, a plaintiff must plead and prove apparent authority, which provides that a principal will be bound not only by authority the principal actually gives to another but also by the authority that the principal appears to give to another. *Id.* at 523. We explained that apparent authority "is the authority which a reasonably prudent person, exercising diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess." *Id.* We also found that "[w]here the principal creates the appearance of authority, the principal 'will not be heard to deny the agency to the prejudice of an innocent party, who has been led to rely upon the appearance of authority in the agent.' " *Id.* at 524 (quoting *Union Stock Yard & Transit Co. v. Mallory, Son & Zimmerman Co.*, 157 Ill. 554, 565 (1895)).

¶ 28    This court in *Gilbert* concluded that a hospital may be found vicariously liable under the doctrine of apparent authority for the negligent acts of a physician providing care at a hospital, regardless of whether the physician is an independent contractor, unless the patient knows or should have known that the physician is an independent contractor. *Id.*

¶ 29    We set forth the following three elements for a hospital to be liable under the doctrine of apparent authority:

" '[A] plaintiff must show that: (1) the hospital, or its agent, acted in a manner that would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the hospital; (2) where the acts of the agent create the appearance of authority, the plaintiff must also prove that the hospital had knowledge of and acquiesced in them; and (3) the plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence.' " *Id.* at 524-25 (quoting *Pamperin v. Trinity Memorial Hospital*, 423 N.W.2d 848, 855-56 (Wis. 1988)).

¶ 30    With respect to the first two elements, we explained that, in order to find "holding out" on the part of the hospital, it is not necessary that there be an express representation by the hospital that the person alleged to be negligent is an employee. *Id.* at 525. Rather, the element is satisfied if the hospital holds itself out as a provider of care without informing the patient that the care is provided by independent contractors. *Id.*

¶ 31    Concerning the third element, "justifiable reliance," this court explained that a plaintiff's reliance is satisfied if the plaintiff relies upon the hospital to provide medical care, rather than upon a specific physician. *Id.* A "critical distinction" is whether the plaintiff is seeking care from the hospital itself or whether the plaintiff is looking to the hospital merely as a place for his or her personal physician to provide medical care. *Id.* We stated:

> " 'Except for one who seeks care from a specific physician, if a person voluntarily enters a hospital without objecting to his or her admission to the hospital, then that person is seeking care from the hospital itself. An individual who seeks care from a hospital itself, as opposed to care from his or her personal physician, accepts care from the hospital in reliance upon the fact that complete emergency room care—from blood testing to radiological readings to the endless medical support services—will be provided by the hospital through its staff.' " *Id.* at 525-26 (quoting *Pamperin*, 423 N.W.2d at 857).

¶ 32    This court ultimately held in *Gilbert* that the trial court improperly granted summary judgment to the defendant hospital, as a genuine issue of material fact existed with respect to whether the physician who treated the plaintiff was an apparent agent of the hospital. *Id.* at 526.

¶ 33    We revisited the issue of apparent authority in the medical malpractice context in *Petrovich v. Share Health Plan of Illinois, Inc.*, 188 Ill. 2d 17 (1999). There, the plaintiff brought a medical malpractice action against a physician and others for their alleged negligence in failing to diagnose her cancer in a timely manner. *Id.* at 22. The plaintiff was a member of a health maintenance organization (HMO) and also named the HMO as a defendant, alleging that the HMO was vicariously liable for the conduct of the participating physicians who treated her. *Id.* at 25. The trial court granted summary judgment to the HMO, holding that it could not be held vicariously liable for the negligence of its physicians who are independent contractors. *Id.* at 22. In rejecting this holding, we explained that the apparent authority doctrine "functions like an estoppel" and "[w]here the principal creates the appearance of authority, a court will not hear the principal's denials of agency to the prejudice of an innocent third party, who has been led to reasonably rely upon the agency and is harmed as a result." *Id.* at 31.

¶ 34    Following our rationale in *Gilbert*, we held that to establish apparent authority against an HMO for physician malpractice, the patient must prove (1) that the HMO held itself out as the provider of health care, without informing the patient that the care is given by independent contractors, and (2) that the patient justifiably relied upon the conduct of the HMO by looking to the HMO to provide health care services rather than looking to a specific physician. *Id.* at 33-34. We ultimately concluded that an HMO may be held vicariously liable for the negligence of its independent-contractor physicians under both the doctrines of apparent authority and implied authority and that the plaintiff was entitled to a trial on both doctrines. *Id.* at 52.

¶ 35    Our most recent statements on apparent authority in the area of medical malpractice come in *York v. Rush-Presbyterian-St. Luke's Medical Center*, 222 Ill. 2d 147 (2006). In *York*, the

- 7 -

plaintiffs filed a medical malpractice action against the attending anesthesiologist who was employed by University Anesthesiologists, S.C., and added Rush as a defendant on the theory that the anesthesiologist was Rush's apparent agent. *Id.* at 151-52. We found that the plaintiff presented sufficient evidence of apparent authority to support the jury's verdict, finding Rush vicariously liable for the malpractice of the anesthesiologist. *Id.* at 195.

¶ 36    Although Rush disputed the sufficiency of the evidence to support the justifiable reliance element, we found the following: (1) there was evidence that the plaintiff had only sought treatment from Rush after he heard that the hospital had good doctors, (2) the anesthesiologist wore either scrubs covered with the Rush logo or a lab coat that displayed the Rush emblem, (3) nothing in the treatment consent form drafted by Rush and signed by the plaintiff alerted him that the anesthesiologist was an independent contractor, and (4) the evidence presented at trial revealed that Rush failed to place the plaintiff on notice that the anesthesiologist was an independent contractor and not an employee of Rush. *Id.* at 196-97.

¶ 37    In affirming the trial court's denial of Rush's motion for judgment notwithstanding the verdict, we reaffirmed our holding in *Gilbert* and stated:

"In *Gilbert*, this court recognized that the relationship between a patient and health-care providers, both physicians and hospitals, presents a matrix of unique interactions that finds no ready parallel to other relationships. To underscore this point, we set forth in great detail what we termed the 'realities of modern hospital care' and concluded that the fervent competition between hospitals to attract patients, combined with the reasonable expectations of the public that the care providers they encounter in a hospital are also hospital employees, raised serious public policy issues with respect to a hospital's liability for the negligent actions of an independent-contractor physician. It is against this specific factual backdrop that we extended the doctrine of apparent agency to instances wherein a plaintiff seeks to hold a hospital vicariously liable for the malpractice of an independent contractor physician." *Id.* at 192.

¶ 38    Turning to the question before us, as acknowledged by NMH during oral argument, prior to *Gilbert*, hospitals could solicit patients, advertise themselves as full-service facilities, and offer all necessary services to patients, yet they could also potentially avoid liability by working through independent contractors. *Gilbert*, as NMH concedes, sought to address this inequity by setting forth the elements necessary to prove apparent authority against a hospital under such circumstances. The elements are a " 'holding out' " by the hospital and " 'justifiable reliance' " by the plaintiff. *Petrovich*, 188 Ill. 2d at 33 (quoting *Gilbert*, 156 Ill. 2d at 525).

¶ 39    Our decision in *Gilbert*, as we later recognized in *Petrovich*, was grounded in "two realities of modern hospital care." First, this court recognized that hospitals, in essence, have become big business. Hospitals increasingly hold themselves out to the public as the providers of health care, particularly in their marketing. Hospitals also benefit financially from the health care delivered in their emergency rooms. Second, the reasonable expectations of the public have changed. Patients have come to rely on the reputation of the hospital in seeking out emergency care. These patients would naturally assume that the physicians attending the emergency room are employees of the hospital, unless put on notice otherwise. Consequently, we held that, unless the patient knows or should have known that the physician providing treatment is an independent contractor, vicarious liability can attach to a hospital for the medical malpractice

of its physicians under the apparent authority doctrine. *Id.* at 32 (citing *Gilbert*, 156 Ill. 2d at 524).

¶ 40    Our health care system has continued to evolve in the years since we decided *Gilbert*. The realities of modern hospital care that informed our decision then are even more true today. Hospitals across the country have consolidated to improve their finances in the health care industry and to attract more patients. *E.g.*, Lisa Schencker, *Loyola Medicine to Acquire MacNeal; Tenet Seeks to Sell 3 Other Chicago-Area Hospitals*, Chi. Trib. (Oct. 11, 2017), http://www.chicagotribune.com/business/ct-biz-loyola-acquires-berwyn-101217-story.html. Others have entered into "rebranding initiatives," which have allowed more than one organization to use similar logos while continuing to retain their individual names. *E.g.*, Mike Nolan, *Rebranding to Bring Modified Name to Ingalls Hospital*, Chi. Trib. (Sept. 14, 2017), http://www.chicagotribune.com/suburbs/daily-southtown/news/ct-sta-ingalls-facilities-st-0915-20170914-story.html.

¶ 41    NMH acknowledges these significant changes in the health care industry and represents that "[l]ike many hospital networks, NMH (now Northwestern Medicine) owns or operates many facilities *** outside of the main hospital campus, including six hospitals and multiple small immediate care clinics in various neighborhood locations." NMH concedes that "depending on the circumstances of the case, a plaintiff could argue apparent agency against NMH arising out of the treatment at one of those facilities."

¶ 42    NMH urges us, however, to hold that *Gilbert* may only be applied to treatment at a hospital or a facility that is owned by the hospital. In *Petrovich*, as we discussed above, we held that the *Gilbert* factors may also be used to impose vicarious liability on HMOs. Consequently, this court has already applied the rationale of *Gilbert* outside of treatment received at a hospital or a facility owned by a hospital.

¶ 43    That said, we find the question before us does not implicate the policy considerations that informed our decision in *Gilbert* and our later holdings in *Petrovich* and *York.* Those cases sought to protect a patient who is unaware that the individual providing him or her medical treatment is not an employee or agent of the hospital or HMO from whom treatment is sought. Under such circumstances, we found a patient should have the right to look to the hospital or HMO in seeking compensation for any negligent care.

¶ 44    The circumstances in this case are in marked contrast to the factual backdrop that led us to extend the doctrine of apparent authority in *Gilbert* and the cases thereafter. Here, Yarbrough sought treatment at Erie but looks to impose liability on NMH. Erie is neither owned nor operated by NMH. While Erie receives some charitable financial and technical assistance from NMH, Erie is an FQHC that relies heavily on federal grants and Medicaid reimbursement to provide underserved communities with primary and preventative care regardless of an individual's ability to pay. Erie's employees are considered federal employees, and suits against Erie or its employees can only be maintained under the Federal Torts Claim Act. Erie does not utilize the Northwestern name. There is no Northwestern-related branding or the use of Northwestern's trademark purple color by Erie.

¶ 45    Plaintiffs rely upon *Malanowski*, which we find inapposite. In *Malanowski*, the plaintiff's decedent treated annually with an independent contractor physician at the Loyola University Mulcahy Outpatient Center. *Malanowski*, 293 Ill. App. 3d at 722. Loyola University of Chicago (Loyola) owned and operated the outpatient center. *Id.* at 726. The appellate court,

relying upon *Gilbert*, held that if, as the plaintiff maintained, the conduct of Loyola led the decedent to rely upon "Loyola" for medical treatment, rather than any particular physician, then the plaintiff should be allowed to recover from Loyola for any negligent care the decedent received from the physician. *Id.* at 727. In significant contrast to this case, the complaint in *Malanowski* alleged the outpatient center bore the "Loyola" name, the outpatient center held itself out as a direct provider of health care services, the outpatient center introduced the decedent to her physician, and the payment for services provided by the physician was made directly to the outpatient center. *Id.* at 728.

¶ 46    We recognize that physicians employed by Erie routinely have privileges to practice at NMH. They must apply for such privileges as would any doctor. *Gilbert* was informed by our concern with the reasonable expectations of the public that the care providers that they encounter in a hospital are also hospital employees. *Gilbert* does not suggest that merely granting a physician employed by another entity hospital staff privileges alone could create an apparent agency relationship.

¶ 47    We refuse to read *Gilbert* and its progeny so broadly as to impose vicarious liability under the doctrine of apparent authority on a hospital for the care given by employees of an unrelated, independently owned and operated clinic like Erie.

¶ 48                                             CONCLUSION

¶ 49    For the foregoing reasons, we answer the certified question in the negative. Accordingly, we reverse the judgment of the appellate court. We remand this case to the circuit court for further proceedings consistent with this opinion.

¶ 50    Appellate court judgment reversed.

¶ 51    Cause remanded.

¶ 52    JUSTICE BURKE, dissenting:

¶ 53    This Rule 308 appeal raises two questions, one legal and one factual. The legal question is whether a medical malpractice plaintiff is automatically barred from asserting the existence of an apparent agency between a health care worker and a defendant hospital when the plaintiff was treated by the health care worker outside the hospital or hospital-owned facility. The factual question is whether, assuming there is no such *per se* bar, there was an apparent agency under the facts of this case. The majority improperly conflates these two issues and, in doing so, grants unwarranted relief to the defendant. Accordingly, I respectfully dissent.

¶ 54                                             Background

¶ 55    The plaintiffs, Cristina[3] Yarbrough and David Goodpaster, filed a medical malpractice complaint on behalf of their minor child, Hayley, against the defendant, Northwestern Memorial Hospital (NMH). In their complaint, plaintiffs alleged that, during the course of her pregnancy with Hayley, Cristina received negligent medical treatment from health care workers at the Erie Family Health Center (Erie), a community health center located in

---

[3]In her discovery deposition, Cristina states that her name is spelled without an "h."

- 10 -

Chicago. According to plaintiffs, this negligent treatment caused Hayley to suffer a premature birth and severe neurological injuries.

¶ 56    Erie is not owned by NMH, and the employees at Erie are not paid by NMH. Plaintiffs maintained, however, that the actions of NMH were such that a reasonable person would have concluded the health care workers at Erie were the agents of NMH and, further, that Cristina relied on this fact in seeking treatment at Erie. Plaintiffs therefore alleged that, pursuant to *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511 (1993), the health care workers at Erie were the apparent agents of NMH and NMH was vicariously liable for their negligent conduct.

¶ 57    NMH moved for partial summary judgment with respect to all claims arising out of the care Cristina received at Erie. NMH asserted that, given the facts of record, no reasonable juror could find that the health care workers at Erie were the apparent agents of NMH. The circuit court denied NMH's motion. The court concluded there were genuine issues of material fact regarding the relationship between NMH and the workers at Erie and, therefore, the question of whether there was an apparent agency was a matter to be resolved by the jury.

¶ 58    NMH thereafter moved for the circuit court to certify that its order denying partial summary judgment merited discretionary appeal under Illinois Supreme Court Rule 308 (eff. Feb. 26, 2010). The circuit court granted that request and, as required under the rule, identified the pertinent question of law underlying its order as follows:

> "Can a hospital be held vicariously liable under the doctrine of apparent agency set forth in *Gilbert v. Sycamore Mun. Hosp.*, 156 Ill. 2d 511 (Ill. 1993), and its progeny for the acts of the employees of an unrelated, independent clinic that is not a party to the present litigation?"

¶ 59    The appellate court denied NMH's request for appeal of the circuit court's order. NMH then appealed to this court. We denied NMH's petition for leave to appeal but entered a supervisory order directing the appellate court to consider the interlocutory appeal.

¶ 60    In its opinion, the appellate court answered the legal question "yes." 2016 IL App (1st) 141585, ¶¶ 36-46. The appellate court held that, so long as a plaintiff can satisfy the elements for a claim based on apparent agency as set forth in *Gilbert*, there is no automatic bar to recovery simply because the negligent conduct of the health care worker did not occur within the four walls of the hospital or hospital-owned facility. *Id.*

¶ 61    The appellate court then addressed NMH's alternative argument that it was entitled to summary judgment on the question of whether an apparent agency existed on the facts of this case. The appellate court rejected this contention. The court stated:

> "plaintiffs do not seek to hold NMH liable merely because, as NMH contends, the Erie physicians have privileges at the hospital. Rather, the issue of whether NMH and/or Erie held themselves out as having such close ties such that a reasonable person would conclude that an agency relationship existed, and whether [Cristina] relied upon NMH or Erie, raises material questions of fact for a jury to resolve. Under the unique facts of this case and in light of the evidence presented thus far, plaintiffs have, at a minimum, raised a question of fact regarding the holding out and reliance elements under *Gilbert* and their apparent authority claim contains issues of fact subject to a jury's determination." *Id.* ¶ 51.

¶ 62    This appeal followed.

¶ 63                                            Analysis

¶ 64     This appeal is brought pursuant to Illinois Supreme Court Rule 308 (eff. Feb. 26, 2010). That rule provides, in relevant part:

> "(a) Requests. When the trial court, in making an interlocutory order not otherwise appealable, finds that the order involves a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, the court shall so state in writing, identifying the question of law involved. Such a statement may be made at the time of the entry of the order or thereafter on the court's own motion or on motion of any party. The Appellate Court may thereupon in its discretion allow an appeal from the order." Ill. S. Ct. R. 308(a) (eff. Feb. 26, 2010).

¶ 65     Rule 308 requires the circuit court to identify, in writing, a legal question that justifies allowing an appeal from an otherwise unappealable, interlocutory order. The rule does not specify what types of legal issues meet this standard. However, because Rule 308 requires the identification of a "question of law," this court has held that the circuit court may not certify for review an order that involves only a disagreement over the application of a rule of law to the case at hand. As this court has recently observed, "[b]y definition, certified questions are questions of law ***. [Citation.] Certified questions must not seek an application of the law to the facts of a specific case." *Rozsavolgyi v. City of Aurora*, 2017 IL 121048, ¶ 21.

¶ 66     In this case, the circuit court concluded that its order denying NMH partial summary judgment involved a question of law regarding the scope of the apparent agency doctrine as set forth in *Gilbert*. In *Gilbert*, the plaintiff filed a medical malpractice and wrongful death action against the defendant hospital for treatment given by a physician within the hospital emergency room. The physician was not employed by the hospital but by a medical association, a separate corporate entity. Plaintiff maintained, however, that the physician was the apparent agent of the hospital and, therefore, the hospital was vicariously liable for the physician's conduct. The circuit court granted the hospital summary judgment, and the appellate court affirmed. This court reversed.

¶ 67     This court noted that "Illinois has long recognized the doctrine of apparent authority, which refers to a type of agency relationship." *Gilbert*, 156 Ill. 2d at 523. Under this doctrine, "[a] principal will be bound by not only that authority which he actually gives to another, but also by the authority which he appears to give." *Id.* The apparent agency is created by the actions of the principal, not the agent. "Apparent authority in an agent is the authority which the principal knowingly permits the agent to assume, or the authority which the principal holds the agent out as possessing. It is the authority which a reasonably prudent person, exercising diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess." *Id.*

¶ 68     The defendant hospital in *Gilbert* asserted that, as a matter of law, all hospitals should be excepted from the doctrine of apparent agency and, therefore, the plaintiff should not be able to pursue a claim against it. The court rejected that argument. Pointing to the reality of how modern hospitals are marketed as large, full-service businesses and the reasonable expectations of the public that flow from that reality, this court held that, under the doctrine of apparent agency, a hospital "can be held vicariously liable for the negligent acts of a physician providing care at the hospital, regardless of whether the physician is an independent contractor,

- 12 -

unless the patient knows, or should have known, that the physician is an independent contractor." *Id.* at 524.

¶ 69 The court set forth the elements of the doctrine as follows:

"For a hospital to be liable under the doctrine of apparent authority, a plaintiff must show that: (1) the hospital, or its agent, acted in a manner that would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the hospital; (2) where the acts of the agent create the appearance of authority, the plaintiff must also prove that the hospital had knowledge of and acquiesced in them; and (3) the plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence." (Internal quotation marks omitted.) *Id.* at 525.

¶ 70 This court then reversed the circuit court's grant of summary judgment to the defendant hospital, holding that there was a genuine issue of material fact as to whether the treating physician was an apparent agent of the hospital. *Id.* at 526.

¶ 71 In this case, NMH notes that, underlying the circuit court's denial of its motion for partial summary judgment is the assumption that the doctrine of apparent agency can be asserted against a defendant hospital when the plaintiff receives treatment outside the hospital or hospital-owned facility. According to NMH, this assumption, which forms the basis for the certified question, is wrong. NMH maintains that, under *Gilbert*, the doctrine of apparent agency can exist only when the contested treatment occurs within the hospital or hospital-owned facility.

¶ 72 The majority rejects this contention. Pointing to *Petrovich v. Share Health Plan of Illinois, Inc.*, 188 Ill. 2d 17 (1999), the majority notes that "this court has already applied the rationale of *Gilbert* outside of treatment received at a hospital or a facility owned by a hospital." *Supra* ¶ 42. Accordingly, there is no *per se* bar to pursuing a claim based on apparent agency for treatment received outside the hospital or hospital-owned facility. I agree with this conclusion.

¶ 73 In *Gilbert*, the court adopted a legal test to be applied to determine whether there is an apparent agency between a health care worker and a defendant hospital. The court then applied the test to the facts before it, which happened to involve a hospital emergency room. That the doctrine of apparent agency was applied in *Gilbert* to treatment that took place within the hospital does not mean that the doctrine itself is limited only to that setting. As our appellate court has noted, there is "nothing in the *Gilbert* opinion that would bar a plaintiff, who could otherwise satisfy the elements for a claim based on apparent agency, from recovering against a hospital merely because the negligent conduct of the physician did not occur in the emergency room or some other area within the four walls of the hospital." *Malanowski v. Jabamoni*, 293 Ill. App. 3d 720, 727 (1997).

¶ 74 In short, the legal rule adopted by the majority in this case is that hospitals are liable for medical negligence committed by unrelated, independent agents when the elements of the doctrine of apparent agency, as set forth in *Gilbert*, are satisfied. There is no automatic or *per se* bar to apparent agency for treatment that takes place outside the hospital or hospital-owned facility. Notably, this is the same conclusion reached by the appellate court. *Supra* ¶ 16 ("The appellate court rejected NMH's argument that *Gilbert* is inapplicable in this case because the alleged negligent conduct did not occur at the hospital.").

¶ 75    Answering the legal question in this way does not conclude this appeal. Although plaintiffs do not face a *per se* bar in asserting that the health care workers at Erie were the apparent agents of NMH, they still must establish the elements of the doctrine as set forth in *Gilbert* in order to prevail. NMH contends they cannot do this and, further, that no reasonable juror could conclude, based on the facts of record, that there was an apparent agency. Accordingly, NMH maintains it is entitled to summary judgment on the application of the apparent agency doctrine to the facts of this case.

¶ 76    The appellate court rejected this alternate argument but expressed some hesitation in reaching it, noting that appeals brought under Rule 308 are typically limited to reviewing the legal question identified by the circuit court. 2016 IL App (1st) 141585, ¶ 50. Other appellate court decisions have gone further, holding that under Rule 308, the reviewing court has no jurisdiction to go beyond the legal question and address the propriety of the circuit court's order. See, *e.g.*, *Combs v. Schmidt*, 2015 IL App (2d) 131053, ¶ 6. This is incorrect.

¶ 77    Rule 308 explicitly states that the appeal is taken "from the order" of the circuit court, not the "question of law involved" in that order. Ill. S. Ct. R. 308(a) (eff. Feb. 26, 2010). The legal question identified by the circuit court explains why the order merits interlocutory review, but ultimately, it is the propriety of the circuit court's order that is before the reviewing court, not simply the question. Thus, a reviewing court always retains the discretion to consider the application of the legal rule addressed in the certified question to the circuit court's order. Indeed, this court has long recognized that we may consider whether a circuit court has erred in denying a defendant's motion for summary judgment after resolving the legal question or questions raised in a Rule 308 appeal. *Heidelberger v. Jewel Cos.*, 57 Ill. 2d 87, 92 (1974) ("this appeal was allowed as an interlocutory appeal under our Rule 308, which would normally result in a remand for further proceedings in the trial court. However, our resolution of the questions presented in this appeal requires consideration of the further question whether the trial court erred in not granting summary judgment for defendant."); *De Bouse v. Bayer AG*, 235 Ill. 2d 544, 558 (2009).

¶ 78    Here, the parties agree that, given the state of the record, there is no barrier to this court deciding whether defendant is entitled to summary judgment on the existence of an apparent agency. However, answering this question requires us to apply the appropriate legal standards.

¶ 79    Summary judgment is appropriate when the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005 (West 2000). When determining whether a genuine issue of material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the moving party and liberally in favor of the nonmoving party. *Gilbert*, 156 Ill. 2d at 518. A triable issue exists when the material facts are disputed or, when the material facts are not in dispute, reasonable persons might draw different inferences from the undisputed facts. *Id.* Because summary judgment is a drastic means of disposing of litigation, courts should grant summary judgment only when the moving party's right is clear and free from doubt. *Id.* Generally, the question of whether an agency relationship exists is a question of fact. *Id.* at 524. However, "if only one conclusion may be drawn from the undisputed facts, then a question of law is presented which may be appropriately dispensed with by summary judgment." *Reynolds v. Decatur Memorial*

*Hospital*, 277 Ill. App. 3d 80, 84 (1996); *Churkey v. Rustia*, 329 Ill. App. 3d 239, 243 (2002); *James v. Ingalls Memorial Hospital*, 299 Ill. App. 3d 627, 632 (1998).

¶ 80    The majority does not apply these standards. Instead, after resolving the legal issue presented in this appeal and concluding there is no *per se* bar to asserting the doctrine of apparent authority outside a hospital or hospital-owned facility, the majority states the following:

> "The circumstances in this case are in marked contrast to the factual backdrop that led us to extend the doctrine of apparent authority in *Gilbert* and the cases thereafter. Here, Yarbrough sought treatment at Erie but looks to impose liability on NMH. Erie is neither owned nor operated by NMH. While Erie receives some charitable financial and technical assistance from NMH, Erie is an FQHC that relies heavily on federal grants and Medicaid reimbursement to provide underserved communities with primary and preventative care regardless of an individual's ability to pay. Erie's employees are considered federal employees, and suits against Erie or its employees can only be maintained under the Federal Torts Claim Act. Erie does not utilize the Northwestern name. There is no Northwestern-related branding or the use of Northwestern's trademark purple color by Erie." *Supra* ¶ 44.

¶ 81    Continuing its emphasis on the factual circumstances of this case, the majority then distinguishes the facts of the present case with those of another appellate decision addressing apparent agency. *Supra* ¶ 45 (discussing *Malanowski*, 293 Ill. App. 3d 720). From this, the majority then reaches the illogical conclusion that the answer to the certified *question of law* in this case is "no."

¶ 82    The majority has conflated the legal issue raised in the certified question with the application of the apparent agency doctrine to the facts of this case. In other words, the majority has concluded that the application of the legal rule is part of answering the certified question. But our case law on this point is unequivocal. "Certified questions must not seek an application of the law to the facts of a specific case." *Rozsavolgyi*, 2017 IL 121048, ¶ 21. The majority has committed clear error.

¶ 83    There is good reason to keep a clear distinction between resolving the legal issue identified in the certified question and applying any resulting legal rule to the circuit court's order: the failure to do so confuses the applicable legal standards and leads to inequitable results. In this case for example, for NMH to prevail on its motion for summary judgment, it must show that plaintiffs can never establish the holding out or reliance elements of apparent agency set forth in *Gilbert*. But instead of focusing on these elements, the majority emphasizes that Erie "relies heavily on federal grants" and that "Erie employees are considered federal employees"—facts that have nothing whatsoever to do with NMH's actions or whether plaintiffs can establish an apparent agency. Further, the majority makes no mention of the burden NMH faces under summary judgment. Indeed, by expressly resting its decision on an analysis of the specific facts of this case but then calling that analysis the answer to the certified question, the majority has effectively awarded NMH summary judgment on a question of fact without ever requiring NMH to meet the summary judgment standard. This is both confusing and unfair to plaintiffs.

¶ 84    The appellate court did a thorough analysis of the *Gilbert* elements and explained why there remain questions of fact sufficient to preclude the entry of summary judgment. I find this analysis persuasive and would adopt it herein.

¶ 85       Summarizing, like the appellate court, this court unanimously agrees that there is no *per se* bar to asserting the doctrine of apparent agency for treatment received outside a hospital or hospital-owned facility. Nevertheless, having resolved this legal issue, the majority answers the certified legal question in this case "no." This result is untenable. The majority effectively awards NMH summary judgment on the existence of an apparent agency without ever conducting a summary judgment analysis or finding that the summary judgment standard has been met. I disagree with this result and therefore respectfully dissent.

¶ 86       JUSTICES FREEMAN and KILBRIDE join in this dissent.