# Illinois Official Reports

## Appellate Court

---

### *Williams v. Tissier*, 2019 IL App (5th) 180046

---

| | |
|---|---|
| Appellate Court Caption | CRYSTAL M. WILLIAMS, Individually, and as Parent and Next Friend of JERRIN K. WILLIAMS, a Disabled Minor, Plaintiff-Appellant, v. BRADLEY J. TISSIER, M.D., OB GYN CARE, LLC; ST. ELIZABETH'S HOSPITAL OF THE HOSPITAL SISTERS OF THE THIRD ORDER OF ST. FRANCIS; and HOSPITAL SISTERS HEALTH SYSTEM, Defendants (St. Elizabeth's Hospital of the Hospital Sisters of the Third Order of St. Francis, Defendant-Appellee). |
| District & No. | Fifth District<br>No. 5-18-0046 |
| Filed | December 19, 2019 |
| Decision Under Review | Appeal from the Circuit Court of St. Clair County, No. 09-L526; the Hon. Vincent J. Lopinot, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Timothy S. Tomasik, Robert F. Geimer, and Patrick J. Giese, of Tomasik Kotin Kasserman, LLC, of Chicago, and James R. Williams, of Williams, Caponi, Foley & Eckert, P.C., of Belleville, for appellant.<br><br>Michael J. Nester, Chi-Young Throckmartin, and Jason M. Gourley, of Donovan Rose Nester, P.C., of Belleville, for appellee. |

Panel                    JUSTICE CATES delivered the judgment of the court, with opinion. Justices Barberis and Wharton concurred in the judgment and opinion.*

# OPINION

¶ 1    Plaintiff Crystal Williams, individually and in her capacity as parent and next friend of Jerrin K. Williams, a disabled minor, filed an action against defendants Bradley J. Tissier, M.D., and OB GYN Care, LLC, alleging that Dr. Tissier was negligent in performing a vaginal breech delivery of her son. Plaintiff subsequently added St. Elizabeth's Hospital of the Hospital Sisters of the Third Order of St. Francis (St. Elizabeth's) and Hospital Sisters Health System as defendants, alleging that St. Elizabeth's was liable for Dr. Tissier's negligence under theories of actual or apparent agency. The circuit court granted summary judgment for St. Elizabeth's. On appeal, plaintiff claims that the circuit court erred in granting summary judgment for St. Elizabeth's on the issue of apparent agency. Plaintiff contends that questions of material fact exist as to whether St. Elizabeth's held out Dr. Tissier as its agent and whether plaintiff reasonably relied on a purported agency relationship between St. Elizabeth's and Dr. Tissier during the period he provided medical care to plaintiff and her son. For reasons that follow, we reverse the circuit court's order granting summary judgment in favor of St. Elizabeth's on the issue of apparent agency and remand the case for further proceedings.

¶ 2                              I. BACKGROUND

¶ 3    On June 3, 2007, plaintiff, then 26 years old and pregnant with twins, began having contractions. She phoned the office of her physician, Dr. Tissier, and received a return call from Dr. Steven Mathus. Plaintiff had never been seen by Dr. Mathus, and she did not know him. Dr. Mathus instructed plaintiff to go to St. Elizabeth's Hospital. Upon arrival, plaintiff was admitted and taken to the operating room for a "double set-up" (twin) delivery. The twins were delivered on June 4, 2007, by Dr. Tissier at St. Elizabeth's. Twin A was delivered without difficulty. Twin B (Jerrin) was in a persistent transverse lie. Dr. Tissier attempted to rotate Jerrin in utero into the vertex position, without success. Eventually, Dr. Tissier performed a vaginal footling breech extraction. During the delivery procedure, Jerrin's umbilical cord became compressed, and Jerrin sustained serious injuries.

¶ 4    On October 2, 2009, plaintiff filed a medical negligence action on behalf of herself and as parent and next friend of Jerrin, against Dr. Tissier and OB GYN Care, LLC. Plaintiff alleged that defendants were negligent in attempting and performing a vaginal breech delivery of Jerrin. Plaintiff further alleged that, as a result of defendants' negligence, Jerrin sustained permanent cognitive deficits, movement disorders, seizure disorders, dysarthria, visual loss, hearing loss, and disfigurement, leaving him unable to live on his own or manage his own affairs.

---

*Justice Chapman was originally assigned to participate in this case. Justice Wharton was substituted on the panel subsequent to Justice Chapman's retirement and has read the briefs and listened to the recording of oral argument.

¶ 5        The parties engaged in a lengthy period of discovery, exchanging interrogatories and taking depositions. In June 2014, plaintiff was granted leave to file an amended complaint, adding St. Elizabeth's as a defendant.[1] In counts I and II of the first amended complaint, plaintiff reasserted her allegations of negligence against Dr. Tissier and OB GYN Care, LLC. In count III, plaintiff alleged that Dr. Tissier was acting as an "actual and/or apparent agent" of St. Elizabeth's at the time of Jerrin's delivery and that St. Elizabeth's was vicariously liable for Dr. Tissier's negligence.

¶ 6        On September 25, 2017, St. Elizabeth's filed a motion for summary judgment and supporting memorandum, asserting that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law on the issues of actual and apparent agency. St. Elizabeth's claimed that plaintiff could not establish actual agency because undisputed evidence showed that Dr. Tissier was a member of OB GYN Care, LLC, and was not an employee of the hospital. St. Elizabeth's further claimed that plaintiff could not satisfy the elements of apparent agency because she could not show that St. Elizabeth's "held out" Dr. Tissier as its agent or that she relied upon a purported agency relationship between the hospital and Dr. Tissier.

¶ 7        St. Elizabeth's argued that plaintiff could not satisfy the "holding out" element of apparent agency because plaintiff signed "*thirteen* Consent for Treatment forms over a seven-year period (including one form executed prior to the treatment at issue)," each of which "clearly and unequivocally" advised plaintiff that the physicians providing treatment at the hospital were independent contractors, not employees of the hospital. (Emphasis in original.) Copies of the 13 "Consent For Treatment/Guarantee And Assignment" (Consent for Treatment) forms, executed between August 9, 2000, and June 3, 2007, were attached in support of the summary judgment.[2] St. Elizabeth's noted that Dr. Tissier was not "a hospital based physician as that term is utilized in the medical profession, *i.e.*, he was not an emergency room physician, radiologist, pathologist, or anesthesiologist," and it did not assign plaintiff to the care of Dr. Tissier.

¶ 8        St. Elizabeth's further argued that plaintiff could not satisfy the "reliance" element of apparent agency where the record showed that plaintiff specifically intended for Dr. Tissier, not St. Elizabeth's, to deliver her twins. St. Elizabeth's attached snippets from the discovery depositions of plaintiff and Dr. Tissier in support of its contention. St. Elizabeth's pointed to plaintiff's deposition in which she stated that Dr. Tissier had been her doctor for many years, that Dr. Tissier provided prenatal care to her during two prior pregnancies and delivered one of her children, that she scheduled appointments by calling Dr. Tissier's office, that she attended her appointments at Dr. Tissier's office, and that she went to the hospital to which she was directed by her doctor's office. St. Elizabeth's noted that Dr. Tissier testified he saw the

---

[1]Hospital Sisters Health System (HSHS) was also named as a defendant in plaintiff's first amended complaint, based on theories of actual and apparent agency. HSHS filed a motion to dismiss, supported by an affidavit, asserting that it was an independent entity and did not own, operate, or do business as St. Elizabeth's. The trial court granted HSHS's motion to dismiss, and that order is not at issue in this appeal.

[2]The Consent for Treatment forms were dated 8/09/00, 11/01/00, 5/11/01, 4/05/02, 9/21/02, 11/29/03, 3/08/04, 3/02/06, 6/30/06, 2/15/07, 4/26/07, 5/23/07, and 6/03/07. Only one of these forms was executed for the delivery of the twins.

plaintiff at his office and not on the grounds of the hospital. St. Elizabeth's concluded that plaintiff was concerned with who would deliver her children, not where they would be delivered.

¶ 9 Plaintiff filed a response in opposition to St. Elizabeth's motion for summary judgment. Plaintiff did not challenge the assertion that she could not establish an actual agency relationship between St. Elizabeth's and Dr. Tissier. She stated that she intended to proceed against St. Elizabeth's on the theory of apparent agency. Plaintiff asserted that the pleadings, depositions, and other materials in the record demonstrated that there were genuine issues of material fact as to whether St. Elizabeth's acted in a manner that would lead a reasonable person to conclude that Dr. Tissier was an agent or employee of the hospital. She also claimed that the record demonstrated the existence of genuine issues of material fact as to whether St. Elizabeth's held itself out as providing "a comprehensive array of healthcare services" and "quality care to pregnant women and their families throughout the birthing process" and whether she reasonably relied upon St. Elizabeth's and its agent, Dr. Tissier, to deliver her twins. Plaintiff attached the complete transcript of her discovery deposition, five additional consent forms from her hospital admission in June 2007, and marketing materials from St. Elizabeth's website in support of her contention that there were material issues of fact on the issue of apparent agency.

¶ 10 In her response, plaintiff also challenged St. Elizabeth's reliance on an "ambiguous" Consent for Treatment form to support its contention that plaintiff knew or should have known that Dr. Tissier was an independent contractor. Plaintiff inserted the first two paragraphs of the St. Elizabeth's Consent for Treatment form, containing "independent contractor disclosure," and noted it was the actual size, approximately 8-point font:

## CONSENT FOR TREATMENT/GUARANTEE AND ASSIGNMENT

**Medical Consent**

I request and authorize my physician, his/her associates, assistants, and any other physicians who may attend me, and St. Elizabeth's Hospital employees and agents, to provide and perform such surgical or medical treatment, medication, therapy, tests, procedures, or other services considered advisable for my health and well being.

I further understand that the physicians on the staff of this hospital, including the attending physician(s), are not employees or agents of the hospital, but rather, are independent contractors, who may have been granted the privilege of using its facilities for the care and treatment of their patients. Physicians on staff at this hospital, including, but not limited to, emergency room physicians, pathologists, radiologists, anesthesiologists, medical students, and other hospital-based physician, my attending physician and consulting physicians are not employees or agents of this hospital. I recognize that these physicians exercise their own independent medical judgment and they are not subject to the supervision or control of this hospital with respect to my treatment.

¶ 11 Plaintiff also asserted that the independent contractor disclosure was vague and confusing. She noted that the document was entitled, "Consent for Treatment/Guarantee and Assignment," and argued that a patient reading that title would have no notice that an independent contractor disclosure would be included in the document. Plaintiff also argued that the independent contractor disclosure was "buried" within a 16-paragraph, two-page document. She noted that the document contained several other subjects, including a consent for treatment, release of information, waiver of responsibility for valuables, and assurances of payment. Plaintiff also noted that the specific specialties, such as emergency medicine physicians, radiologists, and anesthesiologists were identified as independent contractors, but obstetricians were not included within those specialties. Plaintiff argued that the St. Elizabeth's

Consent for Treatment form contained no provisions that clearly and unequivocally identified Dr. Tissier as an independent contractor and not an employee of St. Elizabeth's. No provision in the form explained his relationship to the hospital.

¶ 12 During her deposition, plaintiff testified that, when she arrived at the hospital, she was presented with this Consent for Treatment form. It was a St. Elizabeth's form, and it identified Dr. Mathus as the physician. Plaintiff thought she was signing the Consent for Treatment form in case Dr. Mathus had to deliver the babies. At that time, plaintiff was in labor and experiencing contractions. She did her best, under those circumstances, to read the form before she signed it.

¶ 13 Plaintiff also testified that, during her hospital stay in June 2007, she was presented with several other consent forms to sign, including forms authorizing Dr. Tissier to induce labor and to perform a cesarean section. She attached these forms in support of her pleadings. Each of these forms was a St. Elizabeth's form and a part of a patient's permanent chart. None of the forms included an "independent contractor" disclosure. There were no provisions identifying Dr. Tissier as independent contractor.

¶ 14 Plaintiff testified that Dr. Tissier told her that he wanted her to deliver at St. Elizabeth's.[3] Dr. Tissier explained that he did his work and delivered babies at St. Elizabeth's. Dr. Tissier assured plaintiff that St. Elizabeth's was a good hospital, had a good birthing center, and was a good place to deliver her babies. Plaintiff was aware of St. Elizabeth's as a hospital in the local community. When she learned Dr. Tissier wanted her to deliver at St. Elizabeth's, she conducted an Internet search of the hospital. Based on her review of the website, she thought it appeared to be a good hospital. She noted that Dr. Tissier was listed as one of the doctors on St. Elizabeth's website. Dr. Tissier never informed her that he was not employed by the hospital, and none of the St. Elizabeth's employees informed her that Dr. Tissier was not an employee or agent of the hospital. She testified that she believed Dr. Tissier was an employee of the hospital. Plaintiff also noted that there was no evidence that St. Elizabeth's posted placards or signs in the hospital to inform patients that physicians working in the hospital were independent contractors.

¶ 15 Multiple consent forms described by plaintiff were attached as exhibits to her deposition. exhibit B included the Consent for Treatment form, with its 8-point font. Notably, in the lower right-hand corner of the document, the following appears: "St. Elizabeth's Hospital Consent Form—Form, #121—Page 1." On page two of the form, where plaintiff signed her name, the same notation appears, making it very clear that this form was generated by St. Elizabeth's. In addition to the Consent for Treatment form plaintiff signed on the date of her admission, there were several other St. Elizabeth's Consent for Treatment forms attached, signed by plaintiff during prior admissions. All of the forms, regardless of the date executed, were generated and prepared by St. Elizabeth's. Based upon our review of the forms, some appear to be printed in a font size even smaller than 8-point font.

¶ 16 Another form marked exhibit C, "CONSENT TO OPERATE AND/OR ANESTHETICS AND/OR MEDICAL TREATMENT," was also attached to plaintiff's deposition. This multifaceted document was also generated by St. Elizabeth's. Paragraph one of exhibit C authorized Dr. Tissier and any assistants he chose to perform a "primary cesarean section" on plaintiff. The second and third paragraphs dealt with the nature of the operation and the need

---

[3]Plaintiff had previously delivered a child at a different hospital in the same community.

for, perhaps, additional procedures. Paragraph four dealt with "intra-operative salvage or post-operative salvage" of plaintiff's blood. Paragraphs seven and eight specifically granted St. Elizabeth's the right to dispose of tissue products and even take photographs for use in "scientific journals by St. Elizabeth's." The same form was executed by plaintiff in order to perform the "labor epidural." No physician's name was identified in the "labor epidural" consent; the form referred simply to "DM Physicians, IL, LLC." None of these consent forms included the aforementioned "independent contractor disclosure." Although these forms were all created by St. Elizabeth's, for the benefit of the hospital, none of these forms made any mention of the relationship between the physician treatment provider and St. Elizabeth's, nor did they indicate that Dr. Tissier was not an employee or agent of St. Elizabeth's. The forms were silent as to this issue.

¶ 17        Plaintiff also appended to her responsive pleading the results of an Internet search of St. Elizabeth's archives for May 2007. Exhibit D, attached to plaintiff's deposition, illustrated that during May 2007, St. Elizabeth's had on its website a section entitled, "Obstetrics and Gynecology." Underneath that heading, St. Elizabeth's touted itself, generally, by stating that the hospital had been delivering babies for more than 125 years and was "the hospital of choice" for those who desire "a family-centered maternity experience with the added assurance of a specialized staff and advanced equipment for any special needs that may arise." The website went on to mention the "wide range of resources, services, and special touches" offered by the hospital to "celebrate" the delivery of a child. One of those services, "Labor and Delivery," was promoted as providing "quality care to pregnant women and their families throughout the birthing process." St. Elizabeth's further indicated that "our anesthesiologists are available 24 hours a day to provide epidural placement and other pain management, as needed." Additionally, St. Elizabeth's touted its "Special Care Nursery," as follows:

> "Should your child require intensive care, St. Elizabeth's Hospital has a board-certified neonatologist on staff. As the only Level II (with exceptions) Special Care nursery between Springfield and Carbondale in Southern Illinois, we are equipped to care for infants as small as two pounds and who need breathing assistance."

¶ 18        In May 2007, St. Elizabeth's website also included a section of facts and statistics. The hospital indicated it offered "a comprehensive array of healthcare services to inpatients and outpatients." St. Elizabeth's also represented that its accredited programs consistently demonstrated "quality outcomes that positively impact our patients, their families and the entire community." St. Elizabeth's noted that more than 40 medical specialties were represented at its acute care hospital and that there were three additional St. Elizabeth's facilities, including a "Medical Building with UrgiCare Center" in O'Fallon, Illinois. Plaintiff concluded that the pleadings, depositions, consent forms, and marketing materials were sufficient to show the existence of genuine issues of material fact as to the "holding out" and the "reliance" elements of apparent agency.

¶ 19        On December 8, 2017, St. Elizabeth's summary judgment motion was called for hearing. During this hearing, St. Elizabeth's presented the court with approximately 350 pages of medical records from plaintiff's past office visits with Dr. Tissier. The records were marked as exhibits S, T, and U and were placed under seal by the court. After hearing the arguments of counsel, the trial court took the motion under advisement and asked the parties to prepare proposed orders. Following the hearing, plaintiff filed a motion to supplement the record with an affidavit of plaintiff's counsel, which set forth additional facts and identified certain

documents contained within exhibits S, T, and U as they related to the issue of apparent agency. Plaintiff's motion was granted over St. Elizabeth's objection. In the affidavit, plaintiff's counsel noted that St. Elizabeth's had supplemented the record with 353 pages of medical records regarding Dr. Tissier's care and treatment of plaintiff. Included within plaintiff's medical records were return to work slips and fax cover sheets, to name but a few. All of the documents referenced by plaintiff's counsel indicated the following at the top of the page:

"*OB GYN CARE*
Bradley J. Tissier, M.D.
St. Elizabeth's Medical Park, Suite 107
O'Fallon, IL 62269-1953"

¶ 20    Counsel noted that Dr. Tissier's interrogatory answers and curriculum vitae did not identify his office location as "St. Elizabeth's Medical Park." But the website for St. Elizabeth's clearly advertised that its facilities included a medical building. Therefore, when plaintiff carried her return to work slips, her doctor's address indicated that he was located at St. Elizabeth's Medical Park, a building apparently owned by St. Elizabeth's.

¶ 21    Counsel also stated that he conducted an electronic search and obtained a photograph of an exterior sign located on the grounds of St. Elizabeth's Medical Park. Counsel averred that the signage identified Dr. Tissier as an obstetrician practicing in the St. Elizabeth's Medical Park building. A true and accurate copy of the photo was pasted within the affidavit. The photo portrays a large, freestanding exterior sign. The multipaneled sign is designed with the St. Elizabeth's logo and its color scheme. The top panel displays the following signage: "St. Elizabeth's Hospital, O'Fallon Medical Building." A second panel, just beneath the top panel, displays additional signage: "UrgiCare, An extension of St. Elizabeth's Hospital Emergency Services | Outpatient Services Provided Here: CT Scan, Mammography, Ultrasound, X-Ray, Laboratory, Physical Therapy." Beneath these two larger panels are eight smaller panels, publicizing various medical groups and providers, including "OB-GYN Care and Bradley J. Tissier, M.D." The business address, "1512," is set forth in the bottom panel. The sign makes no distinction between the medical providers and St. Elizabeth's.

¶ 22    On January 31, 2018, the trial court issued an order granting summary judgment in favor of St. Elizabeth's on the issues of actual and apparent agency. Initially, the court found that plaintiff abandoned her theory of actual agency. The court then considered the theory of apparent agency. The court found that plaintiff had been a patient of Dr. Tissier for over seven years and that she attended prenatal visits at his office in O'Fallon, Illinois, and not at the hospital in Belleville, Illinois. The court also found that plaintiff had executed a consent form with independent contractor language on June 3, 2007, the date of her admission to St. Elizabeth's, and that she had signed consent forms with similar language on 12 prior occasions. Citing *Lamb-Rosenfeldt v. Burke Medical Group, Ltd.*, 2012 IL App (1st) 101558, the court noted that the consent form was an important fact to consider with respect to the "holding out" element because it was unlikely that a patient who signed a form containing a "clear and unambiguous" independent contractor disclosure could reasonably believe that the treating physician was an employee or agent of a hospital. The court found that the decision in *Lamb-Rosenfeldt* was dispositive of the "holding out" element and concluded that plaintiff knew or should have known that Dr. Tissier was an independent contractor. The court further found that plaintiff relied on a particular physician, Dr. Tissier, and not the hospital, for the provision of medical services. Thus, the court concluded that plaintiff could not demonstrate

that she relied upon a purported agency relationship between Dr. Tissier and the hospital. Plaintiff filed a timely appeal.

## II. ANALYSIS

On appeal, plaintiff contends that the trial court erred in entering a summary judgment in favor of St. Elizabeth's on the issue of apparent agency. Plaintiff argues that she presented sufficient evidence to show that there were genuine issues of material fact as to the "holding out" and "reliance" elements of apparent agency.

Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016). In determining whether a genuine issue of material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the moving party and liberally in favor of the nonmoving party. *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 518 (1993). A triable issue exists when the material facts are disputed or when reasonable persons might draw different inferences from the undisputed facts. *Gilbert*, 156 Ill. 2d at 518. Generally, whether an agency relationship exists is a question of fact. *Gilbert*, 156 Ill. 2d at 524. A circuit court's order granting a motion for summary judgment is reviewed *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

## A. Apparent Authority

The Illinois Supreme Court has long recognized that hospitals do more than furnish facilities for treatment. See, *e.g.*, *Darling v. Charleston Community Memorial Hospital*, 33 Ill. 2d 326, 332 (1965). Prior to 1993, a hospital could be held vicariously liable only for the negligent acts of its actual agents and employees. *Lamb-Rosenfeldt*, 2012 IL App (1st) 101558, ¶ 24. In 1993, the Illinois Supreme Court was asked to decide whether a hospital could be found vicariously liable for the negligence of independent contractor physicians. *Gilbert*, 156 Ill. 2d at 524. In considering the issue, the supreme court recognized two realities of modern health care: (a) hospitals have become big businesses, essentially holding themselves out to the public as providers of health care and competing for health care dollars, and (b) patients have come to rely on the reputation of the hospital in seeking out care and naturally assume the physicians providing the care, such as emergency room physicians, are employees of the hospital. *Gilbert*, 156 Ill. 2d at 520-21. The supreme court went on to hold that a hospital can be found "vicariously liable for the negligent acts of a physician providing care at the hospital, regardless of whether the physician is an independent contractor, unless the patient knows, or should have known, that the physician is an independent contractor." *Gilbert*, 156 Ill. 2d at 524. Since *Gilbert*, the Illinois Supreme Court has continued to recognize the evolution of the health care industry, noting that hospitals across the country have consolidated to improve finances and to attract more patients and that some hospitals have engaged in "rebranding" initiatives that allow more than one organization to use similar logos while continuing to retain their individual names. See *Yarbrough v. Northwestern Memorial Hospital*, 2017 IL 121367, ¶ 40; *York v. Rush-Presbyterian-St. Luke's Medical Center*, 222 Ill. 2d 147, 192 (2006).

In *Gilbert*, our supreme court set forth three elements necessary to establish a hospital's vicarious liability under the doctrine of apparent agency. A plaintiff must show that:

"(1) the hospital, or its agent, acted in a manner that would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the hospital; (2) where the acts of the agent create the appearance of authority, *** the hospital had knowledge of and acquiesced in them; and (3) the plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence." (Internal quotation marks omitted.) *Gilbert*, 156 Ill. 2d at 525.

The first two elements encompass the "holding out" element of apparent agency. The "holding out" element does not require a showing that the hospital made an express representation that the allegedly negligent person was an employee. *Gilbert*, 156 Ill. 2d at 525. A plaintiff may satisfy the "holding out" element by showing that the hospital held itself out as a provider of care without informing the patient that the care was provided by an independent contractor. *Gilbert*, 156 Ill. 2d at 525.

¶ 29 The "justifiable reliance" element of apparent agency may be satisfied if the plaintiff or person responsible for plaintiff's care relied upon the hospital itself to provide care, rather than upon a specific physician. *Gilbert*, 156 Ill. 2d at 525. Courts have recognized a significant distinction between cases where the plaintiff is seeking care from the hospital itself and cases where the plaintiff is merely looking to the hospital as a place where the plaintiff's personal physician provides care and treatment. *Gilbert*, 156 Ill. 2d at 525-26 (citing *Pamperin v. Trinity Memorial Hospital*, 423 N.W.2d 848, 857 (Wis. 1988)).

¶ 30 The doctrine of apparent agency functions like "an estoppel," and a court will not hear the principal's denials of agency to the prejudice of an innocent third party who has been led to reasonably rely upon the agency and is harmed as a result. *Petrovich v. Share Health Plan of Illinois, Inc.*, 188 Ill. 2d 17, 31 (1999). Thus, unless a patient knew or should have known that the physician providing treatment was an independent contractor, the hospital may be held liable for the negligent acts of that physician under the apparent authority doctrine. *Petrovich*, 188 Ill. 2d at 32.

¶ 31 With these principles in mind, we consider whether the trial court erred in finding, as a matter of law, that plaintiff could not satisfy the holding out element of apparent agency. Initially, we address plaintiff's contention that the trial court erroneously and exclusively relied on a defective consent form to find that plaintiff had adequate notice that Dr. Tissier was an independent contractor.

¶ 32 B. "Holding Out"—Consent Forms

¶ 33 In defending against claims based on apparent agency, hospitals have relied upon signed consent forms containing "independent contractor" disclosures as proof that a specific plaintiff knew or should have known of the independent contractor status of his or her treating physician. See, *e.g.*, *Lamb-Rosenfeldt*, 2012 IL App (1st) 101558, ¶ 30; *James v. Ingalls Memorial Hospital*, 299 Ill. App. 3d 627, 633 (1998). The existence of a signed consent form containing a clear, concise, and unambiguous "independent contractor" disclaimer is an important fact to consider in evaluating the "holding out" element, but it is not dispositive. *James*, 299 Ill. App. 3d at 633. In determining the effect of an independent contractor disclosure in a consent form, reviewing courts have considered the precise language and the location of the disclosure. See, *e.g.*, *York*, 222 Ill. 2d at 196-97; *Lamb-Rosenfeldt*, 2012 IL App (1st) 101558, ¶ 30; *Spiegelman v. Victory Memorial Hospital*, 392 Ill. App. 3d 826 (2009). Courts of review have also recognized there could be situations in which a patient has signed

a consent form containing a disclaimer regarding an employment or agency relationship, but additional facts may exist that would create a triable issue of fact as to whether a hospital held a physician out as its agent. *Churkey v. Rustia*, 329 Ill. App. 3d 239, 245 (2002). Thus, each case must be decided on its own specific facts.

¶ 34 In this case, St. Elizabeth's claimed that plaintiff could not establish the holding out element of apparent agency where she signed 13 individual Consent for Treatment forms, each containing unambiguous independent contractor disclosures. Relying on *Lamb-Rosenfeldt*, 2012 IL App (1st) 101558, ¶ 26, and *Wallace v. Alexian Brothers Medical Center*, 389 Ill. App. 3d 1081, 1086-87 (2009), St. Elizabeth's argued that Illinois law requires the entry of summary judgment in favor of the hospital when the plaintiff is placed on notice that her physician is an independent contractor and not an employee of the hospital.

¶ 35 In *Lamb-Rosenfeldt*, the plaintiff brought an action against St. James Hospital for the alleged medical negligence of its alleged agents in failing to timely screen, diagnose, and treat a recurrence of lung cancer in the plaintiff's decedent. 2012 IL App (1st) 101558. Prior to each treatment session at St. James Hospital, plaintiff's decedent signed a "Consent For Medical Treatment Form." This one-page document contained four sections: a consent for treatment, an authorization for release of information, a liability waiver for personal valuables, and an independent contractor disclosure. *Lamb-Rosenfeldt*, 2012 IL App (1st) 101558, ¶ 4. The disclosure section provided in pertinent part:

> " '*STATEMENT OF UNDERSTANDING: PHYSICIANS ARE NOT EMPLOYEES OF THE MEDICAL CENTER:* I understand that St. James Hospital utilizes independent physicians and consultants to perform services for patients at its hospitals. These physicians may include my private physician, a physician from a physician group who has agreed to treat me because I do not have a physician on staff or a consultant. With the exception of some anesthesiologists who might provide anesthesia to some patient in the hospital, NONE OF THE PHYSICIANS WHO ATTEND TO ME AT THE HOSPITAL ARE AGENTS OR EMPLOYEES OF THE HOSPITAL and therefore, they, and not the hospitals, are legally liable for the physicians' acts.' " (Emphasis in original.) *Lamb-Rosenfeldt*, 2012 IL App (1st) 101558, ¶ 4.

At the bottom of the consent form, before the signature line for patients and witnesses was the following statement: " 'I CERTIFY THAT I HAVE READ AND UNDERSTAND THIS CONSENT AND THAT NO GUARANTEE OR ASSURANCE HAS BEEN MADE AS TO THE RESULTS OR OTHER ASPECT OF ANY TREATMENT, PROCEDURE, OR TEST AUTHORIZED HEREUNDER.' " *Lamb-Rosenfeldt*, 2012 IL App (1st) 101558, ¶ 5.

¶ 36 St. James Hospital moved for summary judgment. The hospital argued that there was no evidence to support an allegation of apparent agency, as decedent had a preexisting physician-patient relationship with the physician who was allegedly negligent and knew or should have known that at the time of the treatment at issue that the physician was not an employee or agent of St. James Hospital. Additionally, decedent had signed multiple consent forms prior to and during her treatment at St. James Hospital over a one-year period that she was treating with her physician. The hospital argued that these forms clearly indicated that the physicians who treated her were not employees or agents of St. James Hospital. *Lamb-Rosenfeldt*, 2012 IL App (1st) 101558, ¶ 15. The trial court granted summary judgment for St. James Hospital, and plaintiff appealed. *Lamb-Rosenfeldt*, 2012 IL App (1st) 101558, ¶ 17. On review, the appellate court found that the independent contractor disclosure was prominent, printed in bold,

capitalized print. The disclaimer language was located directly above the signature line and was not buried within the document. *Lamb-Rosenfeldt*, 2012 IL App (1st) 101558, ¶ 30.[4] The court also considered the testimony of the plaintiff, who indicated that the decedent sought treatment from the defendant-physician and that decedent would have traveled to whatever facility deemed necessary in order to have the defendant-physician treat her. *Lamb-Rosenfeldt*, 2012 IL App (1st) 101558, ¶ 33. Thus, the court concluded that, after signing nine forms containing a clear disclosure statement in bold, capitalized print, and considering the record as presented, the plaintiff's decedent knew or should have known that the primary physician was an independent contractor at the time she sought treatment. *Lamb-Rosenfeldt*, 2012 IL App (1st) 101558, ¶ 30.

¶ 37    In *Wallace v. Alexian Brothers Medical Center*, 389 Ill. App. 3d at 1082-83, the plaintiff's 14-year-old daughter was hit by a car on December 31, 2003, and was subsequently transported by ambulance to the defendant hospital. The plaintiff's daughter was treated by an emergency room physician and a trauma surgeon, but she died later that day. The plaintiff filed a medical negligence action against the treating physicians and the hospital. The plaintiff claimed that the hospital was vicariously liable for the alleged negligence of the doctors who treated her daughter at the hospital. *Wallace*, 389 Ill. App. 3d at 1083-84. The hospital moved for summary judgment, arguing that plaintiff could not establish that the treating doctors were actual or apparent agents of the hospital. *Wallace*, 389 Ill. App. 3d at 1084. The hospital relied on a consent form executed by the plaintiff on December 31, 2003, which stated:

> " 'I understand that physicians who provide professional services to me such as my attending physician and consulting physicians, are not the employees or agents of Alexian Brothers Medical Center, but they are independent contractors who will be providing their specialized services on my behalf and as such will be my employees or agents. Alexian Brothers Medical Center is not responsible for the services these physicians provide. These physician's and their employee's services will be billed separately.
>
> ***
>
> *I acknowledge that I have read this consent form (or a large print version) and have had the opportunity to ask questions.*' " (Emphasis in original.) Wallace, 389 Ill. App. 3d at 1083.

The hospital attached the consent form along with an excerpt from the plaintiff's deposition in which she acknowledged that the signature was hers. The hospital also noted that, within the four years preceding this emergency room visit, the plaintiff had made several trips to the hospital and had signed four identical consent forms. The prior consent forms were attached in support of the hospital's motion. *Wallace*, 389 Ill. App. 3d at 1084.

¶ 38    The *Wallace* plaintiff responded with an affidavit in which she averred that she did not personally sign the December 2003 consent form and that no one ever explained the consent forms to her. The plaintiff further averred that she did not know the treating physicians were

---

[4]Before addressing the substantive issues, the appellate court noted that the record on appeal was incomplete. It did not contain plaintiff's response to the hospital's motion for summary judgment, the transcript of proceedings of the hearing on the motion, and a supplemental record purportedly filed by plaintiff. The court noted that, in the absence of a sufficiently complete record, the reviewing court would resolve all insufficiencies against plaintiff-appellant.

independent contractors, that she had limited education and was in a state of shock at the time her daughter was brought to the hospital by ambulance, and that she relied on the hospital to provide emergency care. *Wallace*, 389 Ill. App. 3d at 1084. The trial court granted summary judgment for the hospital. The judgment was affirmed on appeal. The reviewing court found that the consent form clearly indicated that the hospital contracted with independent physicians and plainly explained that the hospital was not responsible for the services provided by the physicians involved. *Wallace*, 389 Ill. App. 3d at 1092. The court noted that the acknowledgement section was printed in bold type and indicated that the patient had read the form and had been given the opportunity to ask questions about it. The court found that the plaintiff's affidavit was internally inconsistent and that some statements in the affidavit were contradicted by her deposition testimony. *Wallace*, 389 Ill. App. 3d at 1088-90. The court concluded that plaintiff could not satisfy the "holding out" element of apparent agency where plaintiff knew or should have known of the independent contractor status of the physicians who treated her daughter based on the clear and concise language in the consent form. *Wallace*, 389 Ill. App. 3d at 1094.

¶ 39       In the case before us, there are multiple St. Elizabeth's Consent for Treatment forms. As in *Lamb-Rosenfeldt*, the St. Elizabeth's Consent for Treatment form signed by plaintiff on June 3, 2007, included four sections addressing consent for treatment, authorization for release of information, a liability waiver for personal valuables, and a guarantee of account. However, the language and the location of the independent contractor disclosure in the St. Elizabeth's Consent for Treatment form is markedly different from those identified in *Lamb-Rosenfeldt*. In this case, the first two paragraphs of the section entitled "Medical Consent" provide as follows:

> "I request and authorize *my physician*, his/her associates, assistants, and *any other physicians who may attend me*, and St. Elizabeth's Hospital employees and agents, to provide and perform such surgical or medical treatment, medication, therapy, tests, procedures, or other services considered advisable for my health and well being.
>
> I further understand that the physicians on the staff of this hospital, including the attending physician(s), are not employees or agents of the hospital, but rather, are independent contractors, who may have been granted the privilege of using its facilities for the care and treatment of their patients. Physicians on staff at this hospital, including but not limited to, emergency room physicians, pathologists, radiologists, anesthesiologists, medical students and other hospital-based physicians, my attending physician and consulting physicians are not employees or agents of this hospital." (Emphases added.)[5]

Unlike *Lamb-Rosenfeldt*, the independent contractor disclosure in the St. Elizabeth's Consent for Treatment form is not printed in bold type and capital letters and is not plainly visible. The St. Elizabeth's Consent for Treatment form is printed entirely in a small font, making it difficult to read. The independent contractor disclosure is set forth in the medical consent section, nestled between the authorization for treatment and a disclaimer of the results of that treatment.

---

[5]As noted earlier, the Consent for Treatment form, including the independent contractor disclosure language, is printed in an 8-point font. The disclosure has been printed here in an enlarged font size for the sake of the reader.

¶ 40    Unlike *Lamb-Rosenfeldt* and *Wallace*, the patient acknowledgment is printed on page two of the Consent for Treatment form, just above the signature line, but is not highlighted in bold print or capital letters. The acknowledgement states: "I have read the terms and conditions cited on both pages one and two of the consent form. This form has been explained to me and I understand its contents and significance." The independent contractor disclosure and the acknowledgment and signature line are separated by multiple paragraphs covering the authorization for release of information, the liability waiver for personal valuables, and the guarantee of account.

¶ 41    Additionally, the St. Elizabeth's Consent for Treatment form does not contain the clear and concise independent contractor language found in *Lamb-Rosenfeldt* and *Wallace*. In the first paragraph of the St. Elizabeth's form, the patient authorizes "my physician" and "any other physicians who may attend me" to provide treatment. The second paragraph contains the independent contractor disclosure, stating that "attending physicians" are independent contractors and are not employees and that "physicians on staff" are not employees of the hospital. There is no reference to "my physician" in the second paragraph. The second paragraph does not state that "my physician" is an "attending physician" or a "physician on staff." The document does not expressly state that the patient's personal physician was an independent contractor. Unlike the consent forms in *Lamb-Rosenfeldt* and *Wallace*, the St. Elizabeth's Consent for Treatment form did not notify the patient in clear, concise, and express language that the physicians who were going to treat the plaintiff at St. Elizabeth's were independent contractors.

¶ 42    Equally lost in the discussion regarding the Consent for Treatment forms was any acknowledgement of the other consent forms signed by plaintiff on the day of delivery. These additional consent forms clearly authorized treatment by Dr. Tissier and further authorized St. Elizabeth's to take certain actions, including the taking of photographs and the publication of medical articles. None of these consent forms indicated that Dr. Tissier or the LLC performing the epidural were independent contractors of the hospital. All of these forms were generated by St. Elizabeth's, and all identified various physicians who were going to perform procedures necessary for the delivery of plaintiff's twins. And not one of these forms ever mentioned independent contractors.

¶ 43    The St. Elizabeth's Consent for Treatment forms are akin to those described in *Schroeder v. Northwest Community Hospital*, 371 Ill. App. 3d 584 (2006), and *Hammer v. Barth*, 2016 IL App (1st) 143066. In *Schroeder*, the one-page consent form contained six different sections, including a general consent for treatment, a disclosure statement, a release of responsibility for valuables, an assignment of insurance benefits, a payment guarantee, and an acknowledgement. The independent contractor disclosure in *Schroeder* was one of several disclaimers within the same document. *Schroeder*, 371 Ill. App. 3d at 587. The disclosure provided in pertinent part:

> " '*Item 2 disclosure Statement*: Your care will be managed by your personal physician *or other physicians who are not employed by Northwest Community Hospital* or Northwest Community Day Surgery Center but have privileges to care for patients at this facility. Your physician's care is supported by a variety of individuals employed by Northwest Community Hospital or Northwest Community Day Surgery Center, including nurses, technicians and ancillary staff. Your physician may also decide to call in consultants who practice in other specialties and may be involved in your care.

Like your physician, those consultants have privileges to care for patients at this facility, *but are not employed by Northwest Community Hospital* or Northwest Community Day Surgery Center.' " (Emphases added and emphases in original.) *Schroeder*, 371 Ill. App. 3d at 587.

¶ 44        In *Schroeder*, the plaintiff argued that the disclosure section of the form was " 'extremely confusing' " and ambiguous because the language could be reasonably interpreted to mean that the plaintiff's personal physician was employed by the hospital and that other unidentified physicians and consultants were not. *Schroeder*, 371 Ill. App. 3d at 589. The reviewing court reversed an order granting summary judgment in favor of the hospital, finding that the disclosure provision did not expressly disclaim an agency relationship between the plaintiff's physician and the hospital and that the plaintiff could have been reasonably confused by the disclosure in the consent form. *Schroeder*, 371 Ill. App. 3d at 593-94.

¶ 45        In *Hammer v. Barth*, 2016 IL App (1st) 143066, ¶ 5, the disclosure provided in pertinent part:

" 'INDEPENDENT PHYSICIAN SERVICES. I acknowledge and fully understand that some or all of the physicians who provide medical services to me at the hospital are not employees or agents of the hospital *** . Non-employed physicians may include, but are not limited to, those practicing emergency medicine, trauma, cardiology, obstetrics, surgery, radiology, anesthesia, pathology and other specialties. My decision to seek medical care at the hospital is not based upon any understanding, representation, advertisement, media campaign, inference, implication or reliance that the physicians who are or will be treating me are employees or agents of the hospital.' "

Notably, the reviewing court found the disclaimer language was ambiguous because, among other things, "one could assume that some or all or none of the treating physicians are independent contractors." *Hammer*, 2016 IL App (1st) 143066, ¶ 24. The court concluded that a material fact existed as to whether the consent form adequately notified plaintiff of the physician's status as an independent contractor. *Hammer*, 2016 IL App (1st) 143066, ¶ 24.

¶ 46        As noted above, a signed consent form is an important fact on the "holding out" element of apparent agency, but it is not always dispositive. Courts have recognized that there could be situations where a patient signs a consent containing a disclaimer, but additional facts presented could create a triable issue of fact as to whether a hospital held a physician out as its agent. *Churkey*, 329 Ill. App. 3d at 245. This is one of those cases. Here, plaintiff signed several different types of St. Elizabeth's consent forms. Of these different forms, only the Consent for Treatment form included the "independent contractor" language. The others did not, and yet all were generated by the hospital, for its benefit, and authorized St. Elizabeth's and the physicians identified in the consents to take medical-related actions for the care of plaintiff during her delivery. Further, the "independent contractor" disclosure language in the Consent for Treatment form was not clear and concise. Whether the disclosure provided meaningful notice to plaintiff that Dr. Tissier was an independent contractor is a material issue of fact. Plaintiff presented sufficient facts—including the various consent forms prepared by St. Elizabeth's; the medical records identifying Dr. Tissier as working at St. Elizabeth's Medical Park; the photograph of the signage where Dr. Tissier worked, showing the same logo and colors of St. Elizabeth's with the name of OB GYN CARE and Dr. Tissier as having their office located there; the webpages advertising the services of the hospital with its special facilities for delivery of plaintiff's twins; and plaintiff's own testimony that she researched the

hospital's services—that create material issues of fact as to her theory that St. Elizabeth's held out Dr. Tissier as its agent.

¶ 47                           C. "Holding out"—Other Evidence

¶ 48      In this case, as previously referenced, plaintiff testified that she was confused by the St. Elizabeth's consent form that contained the independent contractor language. She thought that "attending physicians" and "physicians on staff" were hospital employees. Plaintiff also testified that she reviewed St. Elizabeth's website and saw that Dr. Tissier was listed as one of its physicians. She believed Dr. Tissier was an employee of St. Elizabeth's, and no one advised her differently. Plaintiff noted that she signed several other consent forms during her admission. None of those forms included an independent contractor disclosure.

¶ 49      Plaintiff presented additional evidence to establish that St. Elizabeth's held itself out as providing prenatal care and maternity services through its agent, Dr. Tissier. Plaintiff produced archived marketing information for St. Elizabeth's from 2007. Therein, St. Elizabeth's represented that it was "the hospital of choice" for those who desire "a family-centered maternity experience with the added assurance of a specialized staff and advanced equipment for any special needs that may arise." St. Elizabeth's also represented that it provided quality care to pregnant women and their families throughout the birthing process and that it had a board-certified neonatologist on staff if a child required intensive care.

¶ 50      Plaintiff also directed the court's attention to the fax cover sheets, billing statements, and return to work slips from Dr. Tissier's medical records, which indicated that Dr. Tissier's office was located in St. Elizabeth's Office Park. Plaintiff reproduced a photograph of a large, external sign outside St. Elizabeth's Office Park. The top panel of the sign indicated that the building was an outpatient center for St. Elizabeth's. Other panels identified the outpatient services provided and the medical providers. Dr. Tissier and OB GYN CARE, LLC, were providers identified on this sign. There was no evidence that additional signage was posted at the hospital or at Dr. Tissier's office notifying patients that physicians were not employees of the hospital.

¶ 51      Notably, St. Elizabeth's discounts the additional facts offered by plaintiff in support of the "holding out" element. In considering a summary judgment, however, a court is required to construe the pleadings, depositions, affidavits, and other materials strictly against the moving party and liberally in favor of the nonmoving party. *Gilbert*, 156 Ill. 2d at 518. In this case, plaintiff was expecting twins. Plaintiff testified that Dr. Tissier told her that she should deliver her twins at St. Elizabeth's. She reviewed St. Elizabeth's website and thought it seemed like a good hospital. Based on this testimony, a finder of fact could conclude that it would be reasonable for a mother expecting twins to conduct an Internet search to ensure that she would deliver her babies at a hospital equipped with a specialized staff and advanced equipment, as represented by St. Elizabeth's on its website. It would also be reasonable to conclude that although plaintiff treated with Dr. Tissier in the past, his relationship to the hospital where plaintiff intended to deliver her twins would be important to plaintiff. The fact that Dr. Tissier's office was located in the St. Elizabeth's building and that he was advertised by St. Elizabeth's on its website further supports plaintiff's contention that there are genuine issues of material fact regarding the "holding out" element of apparent agency.

¶ 52      After reviewing the record, we find that there are genuine issues of material fact concerning whether St. Elizabeth's held out Dr. Tissier as its apparent agent in providing quality maternity

and delivery care to plaintiff. The absence of a clear and concise independent contractor disclosure, together with the additional evidence presented by plaintiff, adequately demonstrate that summary judgment was inappropriate on the "holding out" element of apparent agency.

¶ 53                                    D. "Justifiable Reliance"

¶ 54        In addressing the element of "justifiable reliance" in *Gilbert*, the supreme court held that a plaintiff must establish that she " 'acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence.' " *Gilbert*, 156 Ill. 2d at 525 (quoting *Pamperin*, 423 N.W.2d at 856). The supreme court explained that a plaintiff may satisfy the reliance element of apparent agency if plaintiff shows that she relied upon the hospital to provide medical care, rather than upon a specific physician. *Gilbert*, 156 Ill. 2d at 525. In *York*, the supreme court clarified that the existence of a preexisting physician-patient relationship does not automatically preclude a claim that the patient relied upon the hospital for care. *York*, 222 Ill. 2d at 193. A patient's reliance on a chosen physician's care at a hospital does not foreclose a patient from also relying on the hospital for care. *York*, 222 Ill. 2d at 193.

¶ 55        In this case, plaintiff testified that Dr. Tissier told plaintiff she would deliver at St. Elizabeth's. Dr. Tissier told plaintiff that St. Elizabeth's had a good birthing center and was a good place to deliver her babies. As previously noted, plaintiff testified that she conducted an Internet search when she learned that she would deliver at St. Elizabeth's. She reviewed its website and determined that it appeared to be a good hospital. In May 2007, St. Elizabeth's website publicized and promoted its "comprehensive array of healthcare services," its century-old experience in delivering babies, and its specialized staff and advanced equipment. The website also promoted its neonatal services, claiming to have a board-certified neonatologist on staff if a child required intensive care. The hospital described itself as having the only level II special care nursery between Springfield and Carbondale. Construing plaintiff's testimony and exhibits in a light most favorable to plaintiff, it would be reasonable to infer that these specialized services were important to plaintiff if she were to have complications while delivering the twins. And at no time did St. Elizabeth's attempt to refute the representations made on its website. After reviewing the record, we find that plaintiff showed the existence of a material issue of fact regarding her "reliance" on St. Elizabeth's to provide quality maternity and delivery services through its staff and agents.

¶ 56        As previously noted, when our supreme court first imposed the doctrine of apparent agency, it recognized a certain reality regarding hospitals and their attempts to attract patients, describing it as follows:

> " '[H]ospitals increasingly hold themselves out to the public in expensive advertising campaigns as offering and rendering quality health services. One need only pick up a daily newspaper to see full and half page advertisements extolling the medical virtues of an individual hospital and the quality health care that the hospital is prepared to deliver in any number of medical areas. Modern hospitals have spent billions of dollars marketing themselves, nurturing the image with the consuming public that they are full-care modern health facilities. All of these expenditures have but one purpose: to persuade those in need of medical services to obtain those services at a specific hospital. In essence, hospitals have become big business, competing with each other for health

care dollars.' " *Gilbert*, 156 Ill. 2d at 520 (quoting *Kashishian v. Port*, 481 N.W.2d 277, 282 (Wis. 1992)).

¶ 57    Since this observation was made over 15 years ago, we have seen even more competition between hospitals and treatment providers for patients. This continuing evolution is significant, as the trial court relied, in part, on *Yarbrough*, 2017 IL 121367, in granting St. Elizabeth's motion for summary judgment. *Yarbrough* involved a certified question pursuant to Illinois Supreme Court Rule 308 (eff. Feb. 26, 2010): " 'Can a hospital be held vicariously liable under the doctrine of apparent agency *** for the acts of the employee of an unrelated, independent clinic that is not a party to the present litigation?' " *Yarbrough*, 2017 IL 121367, ¶ 1. In *Yarbrough*, neither the clinic nor the allegedly negligent employee was named as a party to the litigation. The supreme court noted that the clinic was not owned or operated by Northwestern and that it was funded through federal grants and Medicaid reimbursements for purposes of providing underserved communities with care. *Yarbrough*, 2017 IL 121367, ¶ 44. Thus, the court concluded that the "policy considerations" surrounding the evolution of the health care business that informed its decision in *Gilbert* were not implicated in the case before it. *Yarbrough*, 2017 IL 121367, ¶ 43. The supreme court also noted that there were no facts to demonstrate that this independent clinic utilized Northwestern's name, logos, or marketing materials. *Yarbrough*, 2017 IL 121367, ¶ 44. In *Yarbrough*, the plaintiffs could not offer any support for either the "holding out" or "reliance" elements as set forth in *Gilbert*. Thus, we find that *Yarbrough* is distinguishable from the case before us.

¶ 58                                III. CONCLUSION

¶ 59    After construing the pleadings, depositions, and other evidence against St. Elizabeth's and liberally in favor of plaintiff, as required, we find that there is a genuine issue of material fact as to whether Dr. Tissier was the apparent agent of St. Elizabeth's. Whether the trier of fact ultimately finds these facts sufficient to establish apparent agency remains to be determined. Under the circumstances presented in this case, the trial court erred in granting summary judgment for St. Elizabeth's on the issue of apparent agency. Accordingly, the judgment of the circuit court is reversed, and the cause is remanded for further proceedings.

¶ 60    Reversed and remanded.